**KOLLER LAW LLC**
David M. Koller, Esq. (Pa 90119)
Jordan D. Santo, Esq. (Pa 320573)
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANTHONY PEKARSKI,** **Plaintiff,** | : | **Civil Action No.** |
| **v.** | : | **Complaint and Jury Demand** |
| **COUNTY OF BUCKS,** **Defendant.** | : | |

**CIVIL ACTION**

Plaintiff, Anthony Pekarski (hereinafter "Plaintiff"), by and through his attorney, Koller Law, LLC, bring this civil matter against County of Bucks (hereinafter "Defendant"), for violations of the Americans with Disabilities Act of 1990, as amended ("ADA"), Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Pennsylvania Human Relations Act ("PHRA") and the Family and Medical Leave Act of 1993, as amended ("FMLA"). In support thereof, Plaintiff avers as follows:

**THE PARTIES**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
2. Plaintiff is an adult individual residing in Fairless Hills, PA.
3. Upon information and belief, Defendant County of Bucks is a political subdivision of the Commonwealth of Pennsylvania and operates a Department of Corrections which

maintains the Bucks County Correctional Facility at 1730 S Easton Road, Doylestown, PA 18901.

4. Defendant is a public agency as defined by 29 C.F.R. § 825.108(a) as it is a political subdivision of the Commonwealth of Pennsylvania and therefore is considered an employer as defined by 29 C.F.R. § 825.104(a).
5. At all times material hereto, Plaintiff was employed by Defendant for at least twelve hundred and fifty (1,250) hours of service during the twelve-month period prior to requiring leave.
6. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.
7. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

**JURISDICTION AND VENUE**

8. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
9. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

10. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

11. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

12. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is a political subdivision within this judicial district, and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

14. Plaintiff exhausted his administrative remedies under the ADA, Title VII, and the PHRA.

15. On or about January 14, 2025, Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination and retaliation against Defendant.

16. The Charge was assigned a Charge Number 530-2025-02699 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

17. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated June 5, 2026.

18. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.

19. Plaintiff files the instant Complaint within ninety (90) days of his receipt of his Right to Sue in this matter, as it relates to his federal law claims, and more than one year after filing but within two (2) years of the issuance of the Right to Sue in this matter as it relates to his PHRA claims.
20. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

## PLAINTIFF'S EMPLOYMENT HISTORY

21. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
22. Plaintiff is Caucasian.
23. In or around October 2011, Defendant hired Plaintiff in the position of Corrections Officer.
24. Plaintiff was well qualified for his position and performed well.

## PLAINTIFF BECAME DISABLED

25. In or around March 2018, Plaintiff was involved in a car accident in which he suffered serious injury to his right ankle, causing cysts to develop in them.
26. Plaintiff's serious right ankle injury is considered to be a disability under the Americans with Disabilities Act of 1990, as amended ("ADA") and the Pennsylvania Human Relations Act ("PHRA").
27. The major life activities affected by Plaintiff's right ankle injury include, but are not limited to, walking and standing.

## PLAINTIFF APPLIED AND WAS APPROVED FOR FAMILY AND MEDICAL LEAVE ACT ("FMLA") LEAVE

28. As a result of Plaintiff's disability, he applied for Intermittent Family and Medical Leave Act ("FMLA") leave through Sedgwick, Defendant's third-party leave administrator, who approved it.

29. Plaintiff's Intermittent FMLA leave was approved for up to three (3) consecutive days off for up to six (6) times per month in order to rest and/or receive treatment.

30. Plaintiff continued to renew his Intermittent FMLA leave every six (6) months through his employment with Defendant.

**DEFENDANT ENGAGED IN A PATTERN AND PRACTICE OF RETALIATING AGAINST EMPLOYEES WHO UTILIZED FMLA LEAVE**

31. Importantly, Defendant had a pattern and practice of retaliating against employees who utilized FMLA leave, by, *inter alia*, placing them on less desirable "posts" and assigning less desirable job duties.

**DEFENDANT RETALIATED AGAINST PLAINTIFF FOR HIS UTILIZATION OF INTERMITTENT FMLA LEAVE**

32. Specifically, numerous members of Defendant's upper management, including, *inter alia*, Lieutenant Nick Minasian, Lieutenant Kyle Wylie, Sergeant Nick Murphy, Sergeant Anthony Cruz, Sergeant Ronald Grous, and Sergeant Pohoppin followed orders from Dave Kratz, Director of Corrections, and Carl Mettelus, Warden, to give Plaintiff less favorable and/or more tolling job posts, including working with mental health inmates.

33. Typically, more senior Corrections Officers received better post assignments at Defendant.

34. However, these Lieutenants and Sergeants told Plaintiff the orders to place him on unfavorable posts came from Mettelus.

35. These Lieutenants and Sergeants also told Plaintiff that he would not be treated favorably for using his approved Intermittent FMLA leave.

**KRATZ ISSUED PLAINTIFF AN UNWARRANTED WRITTEN DISCIPLINE WHICH WAS RESCINDED UPON APPEAL**

36. In or around March 2024, Kratz issued Plaintiff an unwarranted written discipline.

37. Plaintiff appealed the discipline with his union and the discipline was rescinded as a result.

**PLAINTIFF WAS INVOLVED IN A USE OF FORCE INCIDENT**

38. On or about July 18, 2024, Plaintiff was forced to work in an undesirable, hard to manage post at Defendant again.

39. On this occasion, Plaintiff had to use force for an out of control inmate to comply with Defendant's orders, as Plaintiff was trained to do.

**THE DISTRICT ATTORNEY'S OFFICE NOTIFIED PLAINTIFF THAT HE HAD BEEN CLEARED OF CHARGES REGARDING THE INCIDENT**

40. Approximately one (1) week later, Plaintiff received an email that he had been cleared of charges related to the incident from the District Attorney's Office.

41. Plaintiff had not been informed of any investigation regarding him.

42. Plaintiff was not questioned about the previous situation or told that he did anything wrong.

**LT. THOMPSON WARNED PLAINTIFF THAT KRATZ WAS UPSET THAT PLAINTIFF SUCCESSFULLY APPEALED HIS PREVIOUS DISCIPLINE**

43. Shortly after, Lt. Thompson told Plaintiff that he had not done anything wrong.

44. However, Lt. Thompson informed Plaintiff that Kratz was mad at Plaintiff for "beating his last discipline", or words to that effect.

**DEFENDANT PROCEEDED TO ASSIGN PLAINTIFF TO MENTAL HEALTH INMATE MODULES**

45. Defendant then placed Plaintiff on two (2) mental health inmate modules.

46. For the past ten (10) years of his career, Plaintiff had never been assigned to these undesirable posts.

47. Plaintiff continued to be assigned to work around inmates despite this incident.

**DEFENDANT ASSIGNED PLAINTIFF TO THE OUTSIDE/ROVER POST**

48. In late July through August 2024, Defendant began to assign Plaintiff to the outside post – the "rover post."

49. This was the most undesirable post at Defendant.

**PLAINTIFF COMPLAINED ABOUT HIS ASSIGNMENT AND WAS INFORMED BY LT. MINASIAN THAT THE INSTRUCTIONS CAME DIRECTLY FROM METTELUS**

50. Plaintiff complained to Lt. Minasian about his assignment.

51. Lt. Minasian stated he and Plaintiff's other supervisors received an email from Mettelus that directed them to only assign Plaintiff to the outside/rover post from on.

**LT. THOMPSON TOLD PLAINTIFF THAT DEFENDANT WAS RETALIATING AGAINST HIM**

52. At this time, Lt. Thompson admitted to Plaintiff that Defendant was retaliating against Plaintiff and that he would take no part in Defendant's harassment of Plaintiff.

**PLAINTIFF COMPLAINED TO HUMAN RESOURCES ABOUT THE FMLA RETALIATION AND TOOK A MEDICAL LEAVE OF ABSENCE**

53. At the end of July 2024, Plaintiff emailed Human Resources and complained about the retaliatory conduct that he was subjected to and requested that an investigation be conducted into his complaint.

54. Plaintiff informed Human Resources that he needed to take a leave of absence for approximately five (5) days due to the emotional distress he suffered as a result of Defendant's conduct.

55. Plaintiff called out of work for the next five (5) days and used his sick time for each day.

56. During his leave, Plaintiff was examined by Dr. Michael B. Fischer, Primary Care Physician, who prescribed Plaintiff with insomnia medication due to the emotional distress caused by Defendant's conduct.

57. Plaintiff did not bring in a note from Dr. Fischer to excuse his absences due to Lt. Sherman informing Plaintiff that he did not need to bring in a doctor's note.

## DEFENDANT RETALIATED AGAINST PLAINTIFF BY ASSIGNING HIM TO THE OUTSIDE/ROVER POST

58. Following his return, Defendant assigned Plaintiff to the outside/rover post for every shift after this.

59. For the past ten (10) years of his career, Plaintiff had never been put on this undesirable post.

60. For his entire thirteen (13) year career, Plaintiff had never been assigned the outside/rover post for two (2) days in a row.

## PLAINTIFF MADE MULTIPLE COMPLAINTS OF FMLA RETALIATION AND DISABILITY AND RACE DISCRIMINATION TO DEFENDANT, BUT HIS COMPLAINTS WERE NOT ADDRESSED

61. Throughout the end of the summer of 2024, Plaintiff began to regularly complain via email to Shea Randolph, Assistant Lawyer to Solicitor, Diane Otto, Human Resources Manager, Frank Albanise, Human Resources Supervisor, Lauren Smith, Director of Human Resources, and Margie McKevitt, Chief Operating Officer of Bucks County, about the retaliatory treatment that he was subjected to.

62. Plaintiff complained that he was being retaliated for utilizing his Intermittent FMLA leave.

63. Plaintiff also complained that his disability affected his ability to work, so the outside/rover post, which required walking up and down the grounds, was particularized harassment and punishment aimed at his disability.

64. Plaintiff complained that the outside/rover post was used to harass new employees that Defendant wanted to force to resign.

65. In addition, Plaintiff alleged race discrimination in his emailed complaints to Human Resources.

66. Plaintiff complained that Defendant disproportionately assigned African American and minority Corrections Officers, including, but not limited to, Alu Kiedde, to the outside/rover post, which Plaintiff noticed when he began to work the outside/rover post.

67. Plaintiff further complained that Defendant had an 80% turnover rate for African American employees and told Defendant to look into this racially discriminatory practice.

68. However, Randolph, Otto, Smith and McKevitt continued to ignore Plaintiff's emailed complaints and requests to meet to discuss his complaints.

**PLAINTIFF'S UNION REPRESENTATIVE INSTRUCTED PLAINTIFF TO STOP EMAILING HIS COMPLAINTS BECAUSE DEFENDANT WOULD RETALIATE AGAINST HIM**

69. Robert Devlin, Union Representative, proceeded to instruct Plaintiff to stop sending emailed complaints because Defendant was going to retaliate against him.

**DEVLIN INFORMED PLAINTIFF THAT DEFENDANT INTENDED TO HAVE A HEARING REGARDING HIS INVOLVEMENT IN THE JULY INCIDENT**

70. Devlin also stated that Defendant planned to have a hearing about Plaintiff's July use of force incident, but Defendant did not want Plaintiff to have any information to prepare for the hearing.

71. This was the first time Plaintiff learned about a hearing related to the incident.

72. Plaintiff questioned Richard Dittman, Hearing officer, about his lack of ability to obtain information before the hearing.

73. As a result, Dittman recused himself from the matter.

**PLAINTIFF ATTENDED THE HEARING**

74. In or around early September 2024, the hearing was held.

75. Plaintiff brought four (4) witnesses who confirmed that Plaintiff did nothing wrong during the incident.

**DEFENDANT TERMINATED PLAINTIFF**

76. Despite this, on or about September 2, 2024, Mettelus and Captain James Nottingham, in the presence of Devin, terminated Plaintiff for allegedly his use of force against an inmate in July 2024, two (2) months prior.

**PLAINTIFF FILED A GRIEVANCE REGARDING HIS TERMINATION**

77. Plaintiff filed a grievance regarding his termination.

**PLAINTIFF RETURNED TO WORK AT DEFENDANT, BUT DEFENDANT HAS CONTINUED ITS DISCRIMINATORY AND/OR RETALIATORY CONDUCT AGAINST HIM**

78. In November 2025, Plaintiff was reinstated and returned to work at Defendant following his arbitration hearing.

79. Upon his return, Defendant removed Plaintiff's control center clearances and continues to schedule him to frequently work in the mental health modules, an undesirable post.

80. In addition, Defendant has refused to post the schedule in order to prevent Plaintiff from being able to have weekends off, while less tenured non-disabled Corrections Officers who did not take FMLA leave and complain of retaliation are scheduled in more favorable posts and are given weekends off.

81. Defendant discriminated, and continues to discriminate, against Plaintiff due to his disability and retaliated, and continues to retaliate against him, for requesting a reasonable accommodation in the form of Intermittent FMLA leave and complaining about disability and race discrimination in violation of the ADA, Title VII and the PHRA.

82. In addition, Defendant retaliated against Plaintiff for utilizing his rights under the FMLA in violation of the FMLA.

83. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

**COUNT I – DISABILITY DISCRIMINATION**
**AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED**

84. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

85. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all times relevant hereto, disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

86. Plaintiff was qualified to perform the job.

87. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

88. Circumstances indicated that Plaintiff's disability was the reason for the adverse employment action.

89. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

90. Plaintiff's disability motivated Defendant's decision to take adverse actions against Plaintiff.

91. The purported reason for Defendant's decision is pretextual.

92. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

93. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

94. Defendant's conduct was willful or with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT II – DISABILITY DISCRIMINATION**
**PENNSYLVANIA HUMAN RELATIONS ACT**

95. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

96. Plaintiff is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff has, or had at all times relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

97. Plaintiff was qualified to perform the job.

98. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

99. Circumstances indicated that Plaintiff's disability was the reason for the adverse employment action.

100. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

101. Plaintiff's disability motivated Defendant's decision to terminate Plaintiff.

102. The purported reason for Defendant's decision is pretextual.

103. Others similarly situated but outside of Plaintiff's protected class were treated more

favorably.

104. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT III – RETALIATION**
**AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED**

105. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

106. Plaintiff engaged in activity protected by the ADA.

107. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

108. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

109. Defendant's conduct/omission was willful or done with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT IV – RETALIATION**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

110. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

111. Plaintiff engaged in activity protected by Title VII.

112. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

113. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

114. Defendant's conduct/omission was willful or done with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT V – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

115. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

116. Plaintiff engaged in activity protected by the PHRA.

117. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

118. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT VI – RETALIATION
## FAMILY AND MEDICAL LEAVE ACT OF 1993, AS AMENDED

119. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

120. Pursuant to 29 U.S.C. § 2611(2)(A) and 29 U.S.C. § 2612(a)(1)(C), Plaintiff was eligible for leave under the FMLA.

121. At all times material, Defendant knew, or should have known, of Plaintiff's need for Intermittent FMLA Leave to care for his own serious medical condition.

122. Plaintiff gave Defendant sufficient information to allow it to understand that he needed leave for FMLA-qualifying reasons.

123. The retaliation occurred in the form of the continued implementation of a policy that discourages and interferes with Plaintiff's right to invoke his federally protected rights under the FMLA.

124. As a result of Plaintiff's attempt to invoke his FMLA rights, by requesting and utilizing his FMLA rights, Defendant has retaliated against Plaintiff by terminating his employment.

125. Defendant's motivation for retaliating against Plaintiff was connected causally to Plaintiff's Intermittent FMLA leave.

126. Defendant has acted in bad faith by retaliating against Plaintiff in violation of the FMLA.

127. As a direct and proximate result of Defendant's discharge of Plaintiff, Plaintiff is and was deprived of economic and non-economic benefits resulting from Defendant's willful and/or non-willful actions including but not limited to: loss of back pay, loss of increase in salary, loss of benefits preceding Plaintiff's filing of the lawsuit, cost of providing care, and double liquidated damages under the FMLA for violations not made in good faith.

128. Plaintiff demands judgment against Defendant for all available equitable relief including, but not limited to: reinstatement to job position, full restoration of all leave and health benefits, to which Plaintiff was entitled, and any additional unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

129. Plaintiff further demands favorable judgment against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums, as liquidated damages under §107(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendant and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the FMLA.

**WHEREFORE**, Plaintiff demands compensatory and liquidated damages in addition to counsel fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Anthony Pekarski, requests that the Court grant him the following relief against Defendant:

(a) Compensatory damages;

(b) Punitive damages;

(c) Liquidated damages;

(d) Emotional pain and suffering;

(e) Reasonable attorneys' fees;

(f) Recoverable costs;

(g) Pre and post judgment interest;

(h) An allowance to compensate for negative tax consequences of a lump sum award in a single tax year;

(i) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(j) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the statutory provisions sued hereunder, pursuant to Rules 64 and 65 of

the Federal Rules of Civil Procedure.

**JURY TRIAL DEMAND**

Demand is hereby made for a trial by jury as to all issues.

**CERTIFICATION**

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: September 3, 2026

**By:** ***/s/David M. Koller***

David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*